1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  ddonadio@braytonlaw.com
   BRAYTON❖PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
4  P.O. Box 6169
   Novato, California  94948-6169
5  (415) 898-1555
   (415) 898-1247 (Fax No.)
6
   Attorneys for Plaintiffs
7

BRAYTON❖PURCELL, LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11  ELIZABETH SULLIVAN, as Wrongful      )    No.
    Death Heir, and as Successor-in-Interest to )
12  TROY SULLIVAN, Deceased, and         )
    NICHOLAS NOVO, MARILYN ELAINE        )    COMPLAINT FOR SURVIVAL,
13  RANDOLPH, ANITA SULLIVAN,            )    WRONGFUL DEATH - ASBESTOS;
    DAVID SULLIVAN and LARRY            )    DEMAND FOR JURY TRIAL
14  SULLIVAN, as Legal Heirs of TROY     )    _____
    SULLIVAN, Deceased,                  )
15                                       )
                Plaintiffs,              )
16                                       )
    vs.                                  )
17                                       )
    PUGET SOUND COMMERCE CENTER,         )
18  INC. (FKA TODD SHIPYARDS             )
    CORPORATION),                        )
19                                       )
                Defendant.               )
20                                       )
                                         )
21  TROY RANDALL SULLIVAN and            )
    RICHARD NOVO, JR.,                   )
22                                       )
                Defendant heirs.         )
23  _____  )

24                              **I.**

25                          **PARTIES**

26       1.      Plaintiffs in this action are the above-captioned successor-in-interest to, or the

27  personal representative of the estate of Decedent; and the personal representatives on behalf of

28  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

"Plaintiffs."  TROY RANDALL SULLIVAN and RICHARD NOVO, JR., are statutory Wrongful Death heirs of Decedent TROY SULLIVAN, and are identified in the caption as nominal defendants ("Defendant Heirs") as their consent to be joined as Plaintiffs could not be obtained.

2.     The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: TROY SULLIVAN died June 29, 2019. ELIZABETH SULLIVAN is the spouse of TROY SULLIVAN and is hereinafter referred to as "surviving spouse."

3.     Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A,** attached to Plaintiffs' complaint and incorporated by reference herein.

4.     All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5.     Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.     <u>Jurisdiction</u>:  Plaintiff ELIZABETH SULLIVAN is a citizen of the State of Oregon.  Plaintiff(s) NICHOLAS NOVO, MARILYN ELAINE RANDOLPH, ANITA SULLIVAN, DAVID SULLIVAN and LARRY SULLIVAN, are citizens of the following states, respectively: Texas; Indiana; Oregon; California; and California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION) | Delaware/Washington |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.     <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

///

///

///

///

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence - Survival)

PLAINTIFF ELIZABETH SULLIVAN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT TROY SULLIVAN COMPLAINS OF DEFENDANTS PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

1   products containing asbestos.  The following defendants, and each of them, are liable for the acts

2   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

3   destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

4   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

5   ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

6   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

7   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

8   originally attached to each such ALTERNATE ENTITY:

9   <u>DEFENDANT</u>                                    <u>ALTERNATE ENTITY</u>

10  PUGET SOUND COMMERCE CENTER,           VIGOR SHIPYARDS, INC. ( FKA TODD PACIFIC
    INC.(FKA TODD SHIPYARDS                      SHIPYARDS CORPORATION)
11  CORPORATION)                           SEATTLE-TACOMA SHIPBUILDING CORP.
                                           TODD SEATTLE DRY DOCKS, INC.
12

13       10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

14  each of them, were and are engaged in the business of researching, manufacturing, fabricating,

15  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

16  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

17  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

18  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

19  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

20  asbestos and other products containing asbestos.

21       11.     In part, and without limitation as to other defendants, defendant PUGET SOUND

22  COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), manufactured,

23  modified, serviced and/or repaired asbestos-containing ships and vessels.

24       12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

25  each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

26  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

27  to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

28  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

///

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

17.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

20.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

21.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, ///

1   from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

2   at trial.

3         22.     As a further direct and proximate result of the said conduct of the defendants,

4   their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

5   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

6   pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is

7   requested to amend this complaint to conform to proof at the time of trial.

8         23.     As a further direct and proximate result of the said conduct of the defendants,

9   their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

10  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

11  died on the date previously stated herein.

12        24.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

13  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

14  had full knowledge of, or should have known of, each of the acts set forth herein.

15        25.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

16  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

17  and each defendant's officers, directors, and managing agents participated in, authorized,

18  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

19  each of their ALTERNATE ENTITIES as set forth herein.

20       WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

21  each of them, as hereinafter set forth.

22  SECOND CAUSE OF ACTION
(Products Liability - Survival)

23

24       PLAINTIFF ELIZABETH SULLIVAN AS SUCCESSOR-IN-INTEREST TO THE

25  DECEDENT TROY SULLIVAN COMPLAINS OF DEFENDANTS PUGET SOUND

26  COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), THEIR

27  "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE,

28  ///

1   FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY

2   (SURVIVAL), COMPLAIN AS FOLLOWS:

3       26.     Plaintiffs incorporate herein by reference, as though fully set forth herein, each

4   paragraph of the First Cause of Action  herein.

5       27.     Defendants, their "alternate entities," and each of them, knew and intended that

6   the above-referenced asbestos and asbestos-containing products would be used by the purchaser

7   or user without inspection for defects therein or in any of their component parts and without

8   knowledge of the hazards involved in such use.

9       28.     Said asbestos and asbestos-containing products were defective and unsafe for their

10  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

11  and/or death.  The defect existed in the said products at the time they left the possession of

12  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

13  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

14  persons," including Decedent herein, while being used in a reasonably foreseeable manner,

15  thereby rendering the same defective, unsafe, and dangerous for use.

16      29.     "Exposed persons" did not know of the substantial danger of using said products.

17  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

18  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

19  which Decedent and others similarly situated were exposed.

20      30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing

21  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

22  sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

23  promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

24  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

25  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

26  did so with conscious disregard for the safety of "exposed persons" who came in contact with

27  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

28  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

1   death resulting from exposure to asbestos or asbestos-containing products, including, but not

2   limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

3   from scientific studies performed by, at the request of, or with the assistance of, said defendants,

4   their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

5   defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

6          31.    On or before 1930, and thereafter, said defendants, their ALTERNATE

7   ENTITIES and each of them, were aware that members of the general public and other "exposed

8   persons," who would come in contact with their asbestos and asbestos-containing products, had

9   no knowledge or information indicating that asbestos or asbestos-containing products could

10  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

11  members of the general public and other "exposed persons," who came in contact with asbestos

12  and asbestos-containing products, would assume, and in fact did assume, that exposure to

13  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

14  hazardous to health and human life.

15         32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

16  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

17  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

18  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

19  asbestos-containing products without attempting to protect "exposed persons" from, or warn

20  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

21  asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

22  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

23  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

24  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

25  and suppressed said knowledge from "exposed persons" and members of the general public, thus

26  impliedly representing to "exposed persons" and members of the general public that asbestos and

27  asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

28  ///

ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.   The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

34.   Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

35.   Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent suffered permanent injury and death as alleged herein.

36.   As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

///

///

THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF ELIZABETH SULLIVAN, AS WRONGFUL DEATH HEIR, AND AS

SUCCESSOR-IN-INTEREST TO TROY SULLIVAN DECEASED, AND PLAINTIFF(S)

NICHOLAS NOVO, MARILYN ELAINE RANDOLPH, ANITA SULLIVAN, DAVID

SULLIVAN and LARRY SULLIVAN, AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF

DEFENDANTS PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS

CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A

THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE

(WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.   Plaintiffs incorporate by reference each paragraph contained within the First

Cause of Action as though fully set forth herein.

38.   The heirs at law of the Decedent and their relationship to the Decedent is set forth

below:

| NAME | RELATIONSHIP TO DECEDENT |
|------|--------------------------|
| ELIZABETH SULLIVAN | Spouse |
| LARRY SULLIVAN | Son |
| MARILYN ELAINE RANDOLF | Daughter |
| ANITA SULLIVAN | Daughter |
| DAVID SULLIVAN | Son |
| NICHOLAS NOVO | Grandson |
| TROY RANDALL SULLIVAN | Son |
| RICHARD NOVO, JR. | Grandson |

39.   The individuals set forth as heirs constitute all of the surviving heirs of the

Decedent.

40.   As a direct and proximate result of the conduct of the defendants, their

ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

containing products caused Decedent to develop diseases from which condition Decedent died.

Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

filing the complaint.

///

1    41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the

2    surviving spouse.

3    42.    As a direct and proximate result of the conduct of defendants, and each of them,

4    and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

5    of care, society, comfort, attention, services, and support of Decedent all to the damage of

6    Decedent's heirs.

7    43.    As a further direct and proximate result of the conduct of defendants, and each of

8    them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

9    currently not ascertained.

10   WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as

11   hereinafter set forth.

12                          FOURTH  CAUSE OF ACTION
                          (Products Liability - Wrongful Death)
13

14   PLAINTIFF ELIZABETH SULLIVAN, AS WRONGFUL DEATH HEIR, AND AS

15   SUCCESSOR-IN-INTEREST TO TROY SULLIVAN DECEASED, AND PLAINTIFF(S)

16   NICHOLAS NOVO, MARILYN ELAINE RANDOLPH, ANITA SULLIVAN, DAVID

17   SULLIVAN and LARRY SULLIVAN, AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF

18   DEFENDANTS PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS

19   CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A

20   FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

21   LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

22   44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

23   paragraph of the First, Second and Third Causes of Action herein.

24   45.    As a direct and proximate result of the conduct of defendants, and each of them,

25   Decedent's heirs have sustained the injuries and damages previously alleged.

26   WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

27   each of them, as hereinafter set forth.

28   ///

**FIFTH CAUSE OF ACTION**
(Premises Owner/Contractor Liability)

AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF DEFENDANT PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), AND THEIR ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS), AND ALLEGES AS FOLLOWS:

46.     Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraphs 15 through 21 of the First Cause of Action herein.

47.     At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed, and/or controlled by them.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances.  Said defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY.

48.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises where decedent was present.  The following information provided herein is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information.

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION) | Todd Shipyard Alameda, CA | 1962 (on and off for a total of approx. 9 weeks) |

Additionally, Decedent might have been present at these or other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

49.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various unqualified or unskilled contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

50.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to Decedent and other workers or persons so exposed present on each of the aforesaid respective premises.

51.     At all times relevant herein, Decedent entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/

1  CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the
2  respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and
3  invitation.  In so doing, Decedent was exposed to dangerous quantities of asbestos fibers and
4  other toxic substances released into the ambient air by the aforesaid hazardous conditions and
5  activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said
6  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

7     52.    Decedent at all times was unaware of the hazardous condition or the risk of
8  personal injury created by the aforesaid presence and use of asbestos products and materials and
9  other toxic substances on said premises.

10    53.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
11 LIABILITY DEFENDANTS, and each of them, remained in control of the premises where
12 Decedent was performing his work.

13    54.    Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS
14 retained control over safety and other related conditions and circumstances at Decedent's job
15 site(s) and affirmatively contributed to and exercised, or failed to exercise, that control in a
16 manner that caused Decedent's injuries from asbestos-containing products.

17    55.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
18 LIABILITY DEFENDANTS owed to Decedent and others similarly situated a duty to exercise
19 ordinary care in the management of such premises so as to avoid exposing workers such as
20 Decedent, to an unreasonable risk of harm and to avoid causing injury to said person.

21    56.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
22 LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and
23 reasonable care should have known, that the premises that were in their control would be used
24 without knowledge of, or inspection for, defects or dangerous conditions and that the persons
25 present and using said premises would not be aware of the aforesaid hazardous conditions to
26 which they were exposed on the premises.

27    57.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
28 LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,

survey, or control said premises, or to abate, or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions and hazards on or about said premises.

58.     Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Decedent.

59.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them:

a.  Should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would harm the Decedent and others unless special precautions were taken;

b.  Knew or had reason to know, that the contractors it had selected and hired to install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled, unlicenced, or otherwise unqualified to do so;

c.  Failed to use reasonable care to discover whether the contractors it selected and hired to install, remove, abate, or otherwise handle asbestos-containing materials were competent, or qualified to do so.

60.     In part, Decedent was exposed to dangerous asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

61.     The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances, including but not limited to asbestos.

///

///

1   62.   The unsafe premise or work place was created, in part, by the negligent conduct of

2   the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

3   DEFENDANTS.  Said negligent conduct includes, but is not limited to:

4          a.   Failure to warn of asbestos and other toxic dusts;

5          b.   Failure to suppress the asbestos-containing or toxic dusts;

6          c.   Failure to remove the asbestos-containing and toxic dusts through

7   use of ventilation or appropriate means;

8          d.   Failure to provide adequate breathing protection, i.e., approved

9   respirators or masks;

10          e.   Failure to inspect and/or test the air;

11          f.   Failure to provide medical monitoring.

12          g.   Failure to select and hire a careful and competent contractor or

13   subcontractor.

14   63.   The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties

15   to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions

16   are non-delegable; said duties arise out of, inter alia, common law, California Civil Code § 1714,

17   and California Labor Code § 6400, et seq., or California Health and Safety Code § 40.200, et

18   seq., and regulations promulgated thereunder.  Accordingly, the PREMISES

19   OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said

20   duties whether by themselves or others.

21   64.   Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

22   LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other

23   government regulations promulgated by the United States Government, the State of California,

24   and others, including but not limited to the General Industry Safety Orders promulgated pursuant

25   to California Labor Code § 6400 and the California Administrative Code under the Division of

26   Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,

27   Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108,

28   and Threshold Limit Values as documented for asbestos and other toxic substances under

Appendix A, Table 1 of said Safety Orders; additionally, <u>California Health and Safety Code</u> § 40.200, <u>et seq</u>., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.) to promulgate regulations including, but not limited to <u>B.A.A.Q.D. Regulation</u> 11, Rules 2 and 14, Title 40 <u>Code of Federal Regulations</u>, Chapter 1, Part 61, <u>et seq</u>. -- The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions.  Defendants' violations of said codes include, but are not limited to:

(a)   Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b)   Failing to segregate work involving the release of asbestos or other toxic dusts;

(c)   Failing to suppress dust using prescribed ventilation techniques;

(d)   Failing to suppress dust using prescribed "wet down" techniques;

(e)   Failing to warn or educate Decedent or others regarding asbestos or other toxic substances on the premises;

(f)   Failing to provide approved respiratory protection devices;

(g)   Failing to ensure "approved" respiratory protection devices were used adequately;

(h)   Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

(i)   Failing to provide adequate housekeeping and clean-up of the work place;

(j)   Failing to adequately warn of the hazards associated with asbestos as required by these statutes;

1    (k)     Failing to adequately report renovation and disturbance of asbestos-

2  containing materials, including but not limited to <u>B.A.A.Q.M.D. Regulation</u> 11, Rules 2 and 14;

3    (l)     Failing to have an asbestos removal supervisor as required by regulation;

4    (m)    Failing to get approval for renovation as required by statutes; and

5    (n)     Failing to maintain records as required by statute.

6    65.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

7  them, were the "statutory employer" of the Decedent, as defined by the <u>California Labor Code</u>

8  and California case law.

9    66.    Decedent at all times was unaware of the hazardous condition or the risk of

10  personal injury created by defendants' violation of said regulations, ordinances, or statutes.

11    67.    At all times mentioned herein, Decedent was a member of the class of persons

12  whose safety was intended to be protected by the regulations, standards, statutes, or ordinances

13  described in the foregoing paragraphs.

14    68.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

15  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

16  reasonable care should have known, that the premises that were in their control would be used

17  without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

18  and using said premises would not be aware of the aforesaid hazardous conditions to which they

19  were exposed on the premises, and that such persons were unaware of the aforesaid violations of

20  codes, regulations, and statutes.

21    69.    As a proximate result of the foregoing, Decedent developed asbestos-related

22  illness, which has caused great injury and disability as previously set forth, and plaintiff, has

23  suffered damages as herein alleged.

24    WHEREFORE, plaintiffs, pray judgment against defendants, their ALTERNATE

25  ENTITIES, and each of them, as hereinafter set forth.

26  ///

27  ///

28  ///

1

## IV.

2

## DAMAGES AND PRAYER

3  WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

4 each of them in an amount to be proved at trial in each individual case, as follows:

5    a. For Plaintiffs' general damages according to proof;

6    b. For Plaintiffs' loss of income, wages and earning potential according to

7     proof;

8    c. For Plaintiffs' medical and related expenses according to proof;

9    d. For funeral expenses according to proof;

10    e. For Plaintiffs' cost of suit herein;

11    f. For loss of support according to proof;

12    g. For damages for fraud according to proof;

13    h. For the loss of care, comfort and society; and

14    i. For such other and further relief as the Court may deem just and proper,

15     including costs and prejudgment interest.

16 Dated: June 24, 2020    BRAYTON❖PURCELL LLP

17

18       By: _____

19       David R. Donadio, Esq., CA S.B. #154436
        Email: DDonadio@Braytonlaw.com

20       Tel: (415) 898-1555
        Fax: (415) 898-1247

21       Attorneys for Plaintiffs

22

23      <u>JURY DEMAND</u>

24  Plaintiffs hereby demand trial by jury of all issues of this cause.

25 Dated: June 24, 2020    BRAYTON❖PURCELL LLP

26

27       By: _____

28       David R. Donadio, Esq., S.B. #154436
        Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1                                              EXHIBIT A

2      Decedent:  TROY SULLIVAN, Deceased.

3

4      Decedent's injuries:  Decedent was diagnosed with lung cancer on or about December 2018, and

5      with asbestosis and asbestos-related pleural disease on or about June 2002.

6

7      Decedent died on June 29, 2019.

8

9      Retirement Status:       Decedent retired from his last place of employment as a result of

10     becoming disabled due to an injury not related to asbestos.  He had therefore suffered no

11     disability from his asbestos-related disease as "disability" is defined in California Code of Civil

12     Procedure § 340.2.

13
| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Swift Manufacturing 1410 6th Avenue Columbus, GA also known as: STI Inc. Columbus, GA | Swift Manufacturing Columbus, GA | Laborer | 7/1953-5/1954 |

Job Duties:  Decedent recalled working in a large cotton mill starting when he was 15 years old. Decedent recalled extremely dusty conditions.  Decedent recalled working as a "dalfer" and having to remove the cotton coming off the machine to a "quill," where it was twisted into thread.  Decedent recalled asbestos-insulated pipes in various states of repair running throughout the cotton mill.  Decedent recalled dust on his hair, face and hands.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center San Diego, CA | Trainee | 6/6/1954-9/1/1954 |
|  |  | Cook | 9/16/1954-12/3/1954 |
|  | Naval Receiving Station Treasure Island San Francisco, CA |  | 12/3/1954-12/8/1954 |

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy (cont'd.) | SALISBURY SOUND (AV-13) | Boiler Mechanic | 12/21/1954-3/19/1955; 4/19/1955-9/9/1955; 11/28/1955-5/16/1956; 6/14/1956-2/9/1957; 2/23/1957-5/24/1957; 6/2/1957-7/9/1957; 7/28/1957-11/8/1957 |
| | at:  Mare Island Naval Shipyard Vallejo, CA | | 6/14/1956-8/29/1956 |
| | Naval Receiving Station Treasure Island San Francisco, CA | | 9/30/1955-11/23/1955; 11/8/1957-11/14/1957 |
| | Ryukyus Army Hospital Okinawa, Japan | Patient | 2/9/1957-2/23/1957 |
| | FORRESTAL (CVA-59) | Boiler Mechanic | 1/6/1958-4/25/1958; 5/7/1958-8/13/1958; 8/31/1958-8/31/1959; 9/5/1959-12/23/1959; 1/3/1960-9/12/1960; 9/17/1960-12/16/1960; 12/26/1960-9/14/1961; 10/13/1961-11/24/1961 |
| | at:  Norfolk Naval Shipyard Portsmouth, VA | | 1958 |
| | U.S. Naval Station Mobile, AL | | 11/27/1961-11/30/1961 |

///

///

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy (cont'd.) | MATTAPONI (AO-41) | | 11/30/1961-12/4/1961; 12/10/1961-6/1/1962; 6/9/1962-6/25/1962; 7/12/1962-10/2/1962; 10/4/1962-3/18/1963; 3/24/1963-5/16/1963; 5/24/1963-5/29/1963; 7/12/1963-10/24/1963 |
| | at:  Todd Shipyard Alameda, CA | | 1962 (on and off for a total of approx. 9 weeks) |
| | at:  Hunters Point Naval Shipyard San Francisco, CA | | 11/26/1962-3/18/1963; 3/24/1963-4/5/1963 |
| | MIAMI (CL-89) | | (approx. 1 week in early 1962) |
| | at Mare Island Naval Shipyard Vallejo, CA | | |
| | Naval Station Treasure Island San Francisco, CA | | 6/29/1962-7/11/1962 |
| | Naval Station Petroleum School Pearl Harbor, HI | Trainee | 6/3/1963-7/12/1963 |
| | Standard Oil/Chevron Refinery Barbers Point/Kapolei Oahu, HI | | 6/3/1963-7/12/1963 (1 week) |
| | Naval Station Treasure Island San Francisco, CA | Prison Guard | 10/25/1963-10/28/1963 |

Job Duties:  Decedent served in the United States Navy.  Decedent was a trainee at Naval Training Station, San Diego, California.  Decedent completed basic training and then worked as a mess cook.  Decedent lived in the barracks during basic training and while working as a mess

cook. During basic training and while working as a mess cook decedent swept the barracks on a daily basis, sweeping up and disturbing the asbestos-containing dust that fell from the asbestos insulated pipes that ran throughout the barracks.

Decedent worked as a boiler technician on various Navy ships. Decedent recalled flying to Okinawa, Japan on a naval troop transport plane after completing basic training. Decedent recalled receiving on-the-job training as a boiler technician. Decedent removed, cut, and replaced asbestos-containing boiler insulation, and removed, mixed, and applied asbestos-containing refractory cement, while performing service, maintenance, and repairs on BABCOCK & WILCOX (BABCOCK & WILCOX COMPANY) boilers, GE (GENERAL ELECTRIC COMPANY) 400 kilowatt generators that supplied the electricity throughout the ships, WORTHINGTON (HALLIBURTON ENERGY SERVICES, INC.) and INGERSOLL RAND (INGERSOLL-RAND COMPANY) air compressors, and WESTINGHOUSE (CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)) and GE (GENERAL ELECTRIC COMPANY) pumps and turbines. Decedent removed and replaced hundreds of asbestos-containing FLEXITALLIC (FLEXITALLIC, INC.) gaskets, asbestos-containing insulation block manufactured by PABCO (FIBREBOARD CORPORATION), and rope-type asbestos-containing valve packing.

Decedent recalled that his first ship, the SALISBURY SOUND, was a sea plane tender with two BABCOCK & WILCOX (BABCOCK & WILCOX COMPANY) boilers, each about 1 story high. Decedent recalled the SALISBURY SOUND was at Mare Island Naval Shipyard for repairs. Decedent recalled repairing the BABCOCK AND WILCOX (BABCOCK & WILCOX COMPANY) boilers and cutting and installing asbestos-containing JOHNS MANVILLE (MANVILLE TRUST) insulation at this time. Decedent recalled serving on the SALISBURY SOUND with Darrel Francis, Kentucky.

Decedent recalled that his next ship, the FORRESTAL, had 4 boiler rooms with two 600-pound BABCOCK & WILCOX (BABCOCK & WILCOX COMPANY) boilers in each room which decedent routinely repaired and maintained, disturbing asbestos-containing boiler gaskets and boiler insulation. Decedent was in charge of the number 1 boiler room. Decedent recalled that a ruptured pipe caused a boiler to shut down at sea. Decedent recalled that the boiler was turned off, cooled down and the sailors, including himself, were then put to work removing tubes and disassembling the whole boiler, including the refractory bricks, disturbing asbestos-containing refractory cement. Decedent recalled that a shutdown at sea occurred and the sailors did most of the boiler tear down until the ship went into port at Norfolk Naval Shipyard, where they assisted the civilian boilermen with repairs and cleanup. Decedent recalled this was a major overhaul of the ship. Decedent recalled that all of the boilers were taken out of the ship at this time, as was most of the machinery and asbestos-containing insulation. After the boilers, pipes, machines, and asbestos-containing insulation were taken off the ship, decedent helped install the new materials. Decedent recalled cutting large rolls of asbestos-containing insulation. Decedent recalled installing new asbestos-containing lagging and lagging paste. Decedent removed and replaced the asbestos-containing refractory cement inside the BABCOCK AND WILCOX (BABCOCK & WILCOX COMPANY) boilers. Decedent recalled that he did not use any type of mask or respirator during this time. Decedent recalled this work raised a lot of asbestos-containing dust into the air, which he breathed in.

Decedent recalled his last ship, the MATTAPONI was an old riveted ship that had been taken out of retirement and was very often taken into repair ports. Decedent recalled being in charge of the boiler rooms in this ship and recalled a boiler shutdown while at sea. Decedent recalled the heat in the boiler rooms reached about 120 degrees and recalled that fans were kept going continuously to make the area livable. Decedent recalled extremely dusty conditions. Decedent recalled asbestos-containing dust visible in the air. Decedent recalled asbestos-containing dust on his and his crew's hair, face and clothes. Decedent worked in close proximity to machinist mates, electricians, sheet metal workers and insulators.

After the MATTAPONI collided with the KEARSARGE during refueling operations, the MATTAPONI was repaired at Todd Shipyard, Alameda, California. Decedent was in close proximity to TODD (PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION)) employees as they removed and replaced asbestos-containing gaskets and insulation during this repair period.

While the MATTAPONI was being repaired at Todd Shipyard, decedent was dispatched to the mothball fleet at Mare Island Naval Shipyard where he boarded the mothballed MIAMI, removed its boiler and piping systems and hauled the soot blowers, valves, pumps and water gauges back to be installed on the MATTAPONI. On the MIAMI, decedent removed asbestos-containing insulation in order to access and disconnect steam valves and pumps. Decedent removed asbestos-containing spiral wound gaskets from flanges while disassembling the piping system. Once back on the MATTAPONI at Todd Shipyard, decedent removed and replaced asbestos-containing gaskets and packing while overhauling the newly acquired valves and pumps.

Decedent visited the Standard Oil/Chevron Refinery, located at Barbers Point/Kapolei, Oahu, Hawaii, as part of his training at the Naval Station Petroleum School at Pearl Harbor, Hawaii. Decedent visited the refinery while it was in operation and when repair and maintenance work was being performed. Decedent was in close proximity to insulators removing asbestos-containing insulation and pipefitters removing, cutting, and installing asbestos-containing gaskets and packing.

At Naval Station, Treasure Island, San Francisco, California, decedent worked as a prison guard. Decedent lived in the barracks during this time and cleaned them on a daily basis, sweeping up and disturbing the asbestos-containing dust that fell from the asbestos-insulated pipes running throughout the barracks.

Decedent recalled the following co-workers: Lawrence Delaney, c/o Brayton❖Purcell LLP; Darryl Baker, address currently unknown; Al McDermott, address currently unknown; Quates, address currently unknown; Shofe, address currently unknown; Hutley, address currently unknown; and Baker, address currently unknown.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Department of Defense, Naval Weapons Station, Concord, CA | Naval Weapons Station Concord, CA | Ordnance Worker | 12/6/1963-5/19/1964 |
| | | Firefighter | 5/20/1964-5/23/1966; 1/16/1967-3/2/1973 |
| | MOUNT KATMAI (AE-16) | | 12/1970 (a few hours) |

Job Duties: Decedent recalled working as a civilian employee at the Concord Naval Weapons Station in Concord, California. Decedent was employed first an ordnance worker. Decedent recalled loading ships with 250 and 500 pound blockbuster bombs and other munitions going to Vietnam. Decedent recalled using forklifts and cranes to lift bombs off of the train box cars and the trucks that came into the weapons station. Decedent recalled the trains would pull alongside the dock and forklifts would be used to unload them. Decedent recalled the cranes would then hoist some forklifts into the holds for use in packing the ammunition in the holds. Decedent recalled some of the ships taking as long as two weeks to load. Decedent recalled working all day in the holds and recalled broken, dusty asbestos-containing insulation and pipes everywhere.

During the course of loading ammunition decedent bumped into and disturbed asbestos-containing insulation on pipes and machinery.

Decedent recalled next working as a firefighter and driving the fire trucks on the Naval station and in the nearby town of Port Chicago, California.  Decedent recalled often working 2 shifts consecutively and he recalled that there were many fires in the town at that time.  Decedent recalled using a fire axe to break through burning walls and cutting through dusty, burned asbestos-containing insulation.  Decedent recalled being near burning houses that had asbestos-containing siding and insulation that were disturbed as he put out these fires.  Decedent recalled boarding ships at dockside to put out fires.  Decedent recalled using fire retardant gloves, suits and asbestos blankets.  Decedent recalled working in close proximity to machinists, electricians, boilermen, sheet metal workers and insulators.  Decedent worked in close proximity to PG&E (PACIFIC GAS AND ELECTRIC COMPANY) employees as they dug up high-voltage wires and disturbed asbestos-containing insulation while repairing the wires.  Decedent boarded the MOUNT KATMAI to fight a fire and entered the boiler room, bumping into and disturbing asbestos-containing insulation in the course of extinguishing the fire.  Decedent recalled that the fire trucks were repaired in shops at the facility.  Decedent recalled observing brake, engine and clutch work being carried out on Dodge, Chevrolet, International, Ford, LaFrance and Plymouth vehicles.  Decedent's supervisors included Jack W. Pitts, address currently unknown; W. R. Smith, Knightsen, California; D. Margalati, address currently unknown; and D. G. Conley, Antioch, California.  Decedent recalled the following co-workers:  Manny, address currently unknown, Schulp, address currently unknown; William E. Peterson, Concord, California; Danny, address currently unknown, Darryl Baker address currently unknown; Kenny Phipps, Concord, California; John Costello, address currently unknown; Walter Britton, Concord, California; James Carrier, Concord, California; B. B. Taha, Pittsburg, California; and Victor L. Moore, address currently unknown.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Maxson Electronics<br>Sunrise HWY<br>Great River, NY | Maxson Electronics<br>Macon, GA | Machine<br>Operator | 5/23/1966-<br>7/7/1966 (approx.<br>1 month) |

Job Duties:  Decedent worked in the machine shop making components for missiles.  Decedent ran a chucker using drill bits.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Air Force Logistics Center<br>Warner-Robins AFB,<br>Warner-Robins, GA | U.S. Air Force Base<br>Warner-Robins AFB<br>Warner-Robins, GA | Heating<br>Equipment<br>Repairman | 7/12/1966-<br>7/19/1966 |

Job Duties:  Decedent used a broom and dust pan to sweep up areas around boilers and heating equipment.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Martinez Packers Inc.<br>Martinez, CA | Martinez Packers, Inc.<br>Martinez, CA | Packer | 7/1966-9/1966<br>(1 Day) |

Job Duties:  Decedent worked as a packer in a canning factory for one day.

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location | Job Title | Dates |
|----------|----------|-----------|-------|
| John Baptista<br>1457 Babel Lane<br>Concord, CA | Various homes and businesses in and around Antioch, CA; Pleasant Hill, CA; Moraga, CA; Walnut Creek, CA; Orinda, CA; Lafayette, CA, Martinez, CA; Danville, CA, and Concord, CA | Laborer | 10/1967-12/1968;<br>4/1969-6/1970;<br>10/1970-12/1970;<br>1/1972-12/1972 |

Job Duties:  Decedent recalled that this was a "moonlighting" job and coincided with the years he was working as a government firefighter.  Decedent recalled working a minimum of every other day for 8 hours.  Decedent recalled using a handsaw and cutting and grinding asbestos-containing JOHNS-MANVILLE (MANVILLE TRUST) Transite pipe.  Decedent recalled ordering and collecting the pipe from GENERAL PLUMBING (GENERAL PLUMBING SUPPLY COMPANY, INC.) in Walnut Creek, California, and a supplier on Market Street in Concord, California.  Decedent installed septic tanks and sewers.  Decedent recalled shoveling dirt.  Decedent recalled rebuilding the engine of a 1957 Ford septic tank truck for his employer.  Decedent recalled replacing the old asbestos-containing gaskets with VICTOR (DCO LLC (FKA DANA COMPANIES, LLC)) asbestos-containing gaskets purchased from KRAGEN AUTO PARTS (O'REILLY AUTO ENTERPRISES, LLC (FKA CSK AUTO, INC.)), Concord, California.  Decedent recalled the following co-workers:  Elliott, last name and address currently unknown; Carl Baptista, Concord, California, and company owner John Baptista, deceased.

| Employer | Location | Job Title | Dates |
|----------|----------|-----------|-------|
| Central Moving & Storage<br>1561 Carriage Dr.<br>Walnut Creek, CA | Unknown residence<br>Walnut Creek, CA | Laborer | 1/1968-3/1968<br>(½ Day) |

Job Duties:  Decedent worked for ½ a day as a furniture mover.

| Employer | Location | Job Title | Dates |
|----------|----------|-----------|-------|
| Antonio Poipao<br>Turlock, CA | Various locations in the San Francisco, Bay Area, including a water line in Richmond, CA | Laborer | 4/1970-6/1970;<br>10/1970-6/1971 |

Job Duties:  Decedent recalled that this was a "moonlighting" job and coincided with the years he was working as a government firefighter.  Decedent recalled working a minimum of every other day for 8 hours.  Decedent recalled using a handsaw and cutting and grinding asbestos-containing JOHNS-MANVILLE (MANVILLE TRUST) Transite pipe.  Decedent installed septic tanks and sewers.  Decedent recalled shoveling dirt.  Decedent recalled the following co-workers: Tony Poipao (deceased); and Elliott, address currently unknown.

| Employer | Location | Job Title | Dates |
|----------|----------|-----------|-------|
| Troy Sullivan's Septic Systems Service, Concord, CA | Various single family dwellings in and around Concord; Danville; Lafayette; and Orinda, CA | Backhoe Operator | 4/1973-1980 |

///

Job Duties:  Decedent was self-employed.  Decedent recalled digging holes and installing gas, sewer and water pipes.  Decedent recalled using asbestos-containing transite pipe manufactured by JOHNS-MANVILLE (MANVILLE TRUST).  Decedent recalled purchasing supplies from GENERAL PLUMBING (GENERAL PLUMBING SUPPLY COMPANY, INC.), in Walnut Creek, California, and a supply shop on Market Street, Concord, California.  Decedent recalled beveling, cutting, and grinding pipe ends down with a hand saw.  Decedent recalled asbestos-containing rubber coupling seals.  Decedent recalled asbestos-containing dust on his face and hands.  Decedent recall owning several work vehicles including 2 backhoes, a septic tank truck, a 1952 GMC dump truck, a 1967 Dodge dump truck, 1972 flatbed Ford truck, 2 John Deere tractors, a John Deere 2010 and a John Deere 1010, and a Miller trailer.  Decedent removed and replaced asbestos-containing brakes in the 1972 Ford flatbed truck.  Decedent removed a bearing from the JOHN DEERE (DEERE & COMPANY) 1010 tractor, which required him to remove the clutch assembly and replace damaged, asbestos-containing friction components in the clutch assembly. Removing the brake assembly disturbed asbestos-containing friction dust.  Decedent obtained a new clutch assembly with asbestos-containing friction components from a JOHN DEERE (DEERE & COMPANY) dealership in Oakland, California.  Decedent disturbed the asbestos-containing, original equipment manufacturer's clutch friction components when installing them and during subsequent clutch adjustments.  Decedent recalled purchasing asbestos-containing replacement parts at KRAGEN AUTO PARTS (O'REILLY AUTO ENTERPRISES, LLC (FKA CSK AUTO, INC.), and NAPA AUTO PARTS (GENUINE PARTS COMPANY).  Decedent recalled doing all the maintenance work on the vehicles including approximately a brake and a clutch job on each vehicle each year he owned them. Decedent recalled that he used asbestos-containing BENDIX (HONEYWELL INTERNATIONAL INC.) brake products and BORG-WARNER (MORSE TEC LLC, AS SUCCESSOR-BY-MERGER TO BORG-WARNER CORPORATION) clutch parts.  Decedent used asbestos-containing VICTOR (DCO LLC (FKA DANA COMPANIES, LLC) gaskets for his engine rebuilding and maintenance work.  Decedent performed engine repair work on engines he had previously rebuilt, removing asbestos-containing VICTOR (DCO LLC (FKA DANA COMPANIES, LLC)) gaskets he had installed when rebuilding the engines.  Decedent recalled the following co-workers:  his nephew Lucky address currently unknown; son Larry Sullivan, address currently unknown; son-in-law Rich Novo, address currently unknown; son-in-law Lloyd Randolph, deceased; and son Troy Randall Sullivan, c/o Brayton❖Purcell LLP.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| V&M Backhoe<br>2121 B Piedmont Way<br>Pittsburg, CA | V&M Backhoe<br>Pittsburg, CA | Backhoe<br>Operator | 1981-1983 |

Job Duties:  Decedent recalled operating a backhoe and performing digging work for various tract home developments, particularly foundations and trenches for water and sewer piping. Decedent recalled the following co-workers:  Michael Novo, Penn Valley, California; and Rich Novo, address currently unknown.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Lisbon Equipment Rental Inc.<br>Lodi, CA | Lisbon Backhoe Company<br>Concord, CA<br><br>Various locations along<br>Highway 4<br>Contra Costa County, CA | Backhoe<br>Operator | 1981-1986 |

*///*

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Lisbon Equipment Rental Inc. Lodi, CA (cont'd.) | Lisbon Backhoe Company Concord, CA | Backhoe Operator | 1981-1986 |
| | Various locations in Oakland, CA; Richmond, CA, and San Pablo, CA | | |
| | New fire main system Richmond, CA | | |
| | Blackhawk Danville, CA | | |
| | New Subdivision Pinole, CA | | |

Job Duties:  Decedent recalled operating a backhoe for construction jobs.  Decedent recalled also getting down into the trenches to lay pipe and recalled hooking up asbestos-containing JOHNS-MANVILLE (MANVILLE TRUST until 1982 and J-M MANUFACTURING COMPANY, INC. from 1983-1986) Transite pipe.  Decedent recalled that this company had a contract with PG&E and that he would dig the holes for their new construction and then assist with hooking up gas and electric lines.  Decedent recalled that PG&E was in the process of replacing their old copper lines with plastic lines and that the crew worked throughout the Bay Area.  Decedent worked during new construction in the Blackhawk development, Danville, California.  Decedent recalled that this company also had a contract with East Bay Municipal Utility District and that the crew was sent all around the East Bay to repair lines or to install water lines for new housing developments.  Decedent recalled working in close proximity to welders, electricians and pipefitters.  Decedent was in close proximity to employees of East Bay Municipal Utility District as they cut, beveled, and installed asbestos-cement pipe.  Decedent recalled dusty conditions and recalled asbestos-containing dust on his hair, face and hands.  Decedent recalled working with son-in-law Lloyd Randolph, deceased.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Alexander P. Madonna Madonna Construction Madonna Inn San Luis Obispo, CA | Highway 4 and Interstate 80 near Rodeo, CA | Backhoe Operator | 1986-1987 (8 months) |

Job Duties:  Decedent recalled that he was hired to assist with installing a paved highway. Decedent operated a back hoe and a ram hoe attachment for breaking concrete.  Decedent recalled working outside.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Fluor Constructors International Inc. 9701 Jeronimo Rd. Irvine, CA | Union Oil Refinery Rodeo, CA | Backhoe Operator | 4/1986-7/1986 (4 ½ months) |

Job Duties:  Decedent recalled working out of Operating Engineers Union Local #3.  Decedent recalled operating a crane and a backhoe.  Decedent recalled that there were miles of asbestos-insulated steam pipes in various states of repair at the refinery.  Decedent recalled working near

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

boiler tear-down debris and broken, dusty asbestos-containing insulation in the refinery and chemical plant.  Decedent recalled asbestos-containing dust visible in the air and dust on his hair, face and clothes.  Decedent recalled working in close proximity to pipefitters, insulators, and boiler technicians.  Decedent worked in close proximity to PMI (FOLEY-PMI, INC.) pipefitters as they removed, cut, and installed asbestos-containing packing and gaskets.  Decedent recalled he was required to wear a hard hat and safety glasses, and sometimes paper coveralls, but not any respiratory protection.  Decedent recalled the following co-worker:  Bobby Dobbs, Merlin, Oregon.  Decedent recalled the following employee of Union Oil, Chuck Miles, Jackson, California.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| E.E. Gilbert Construction, Inc., 155 Howe Road, Martinez, CA | Various locations in and around the Bay area, including but not limited to: | Backhoe Operator | 1987-1991 |
| | Chevron Oil Richmond, CA | | 5/19/1987-1989 (2 years) |
| | Shell Oil Refinery Martinez, CA | | (1 year, on and off) |
| | Exxon (Humble Oil) Refinery Benicia, CA | | (2 months) |
| | Chevron Chemical Richmond, CA | | (1 week) |
| | Monsanto Chemical Plant Martinez, CA | | (2 Weeks) |
| | Dow Chemical Pittsburg, CA | | (4 Months) |
| | E.I. Dupont de Nemours & Co. Antioch, CA | | (4 Months) |
| | Crown Zellerbach Wilbur Ave. Antioch, CA | | (off and on for a total of 1 month) |
| | Allied Chemical Port Chicago Highway Pittsburg, CA | | (1 month) |
| | E.E. Gilbert shop Howe Road Martinez, CA | | |

///

///

| Employer | Location | Job Title | Dates |
|----------|----------|-----------|-------|
| E.E. Gilbert Construction, Inc., 155 Howe Road, Martinez, CA (cont'd.) | Various locations in and around the Bay area, including but not limited to: | Backhoe Operator | 1987-1991 |
| | Atomic Energy Commission (AEC) Lawrence Livermore Lab Livermore, CA | | (1 week) |
| | U.S. Steel aka U.S. Posco Pittsburg, CA | | (3 weeks) |
| | Tosco Corp. Avon, CA | | (2 months, on & off) |
| | Anheuser-Busch Brewery (Budweiser) Fairfield, CA | | (3 weeks) |

Job Duties:  Decedent recalled working out of Operating Engineers Union Local #3.  Decedent recalled that this company was primarily a cement contractor.  Decedent recalled operating backhoes, bobcats, cranes, boom trucks and dump trucks.  Decedent recalled his crew often going into the big refineries during plant shutdowns and tearing out old cracked cement and pouring new pre-mixed cement for foundations.  Decedent recalled sometimes working in the refineries for 2 or more months at a time.  Decedent recalled working in the big oil tanks for more than 18 hours at a stretch, pouring cement over a rubberized leakproof floor layer.

Decedent recalled that his crew was often called into the chemical plants for cement tear out and repairs.  Decedent recalled that there were miles of insulated steam pipes in all the plants in various states of repair.  Decedent recalled working near boiler tear-down debris and broken, dusty insulation in the refineries and chemical plants.  Decedent recalled AMERICAN STANDARD (TRANE U.S. INC. (FKA AMERICAN STANDARD INC.)) and FOSTER WHEELER (FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)) boilers in the refineries.  Decedent recalled INGERSOLL-RAND (INGERSOLL-RAND COMPANY) air compressors in the refineries.  Decedent recalled dust visible in the air and dust on his hair, face and clothes.

At Crown Zellerbach, Antioch, California, decedent removed an existing water main that had failed and installed a new water main.

Decedent worked in the tank farm at Exxon (Humble Oil) Refinery, Benicia, California, during a shut down.  Decedent removed pipes covered with existing, dilapidated asbestos-containing insulation.  Decedent disturbed asbestos-containing gaskets when removing pumps from foundations.

Decedent worked in the Ortho division of Chevron Chemical, Richmond, California.

At U.S. Steel in Pittsburg, California decedent constructed a loading dock on a pier.

At Tosco Corp., Avon, California, decedent used a backhoe and other heavy equipment to dig a trench and install an underground pipeline.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1   Decedent used a hoist and backhoe when constructing new concrete structures at Anheuser-
2   Busch Brewery (Budweiser), Fairfield, California.

3   At Chevron Oil, Richmond, California, decedent worked in the wax plant.  Decedent worked in
    close proximity to pipefitters removing asbestos-containing gaskets from flanges as they removed
    pumps and valves.  Decedent recalled witnessing a boiler teardown by J.T. THORPE & SON
4   (J.T. THORPE & SON, INC.) at Standard Oil in Richmond, California. During the boiler tear
    down decedent was in close proximity to J.T. THORPE & SON employees as they removed
5   asbestos-containing gaskets from boilers.  Decedent recalled working in close proximity to crane
    operators, pipefitters, insulators, machinists, painters and boiler technicians.  Decedent was
6   required to wear a hard hat and safety glasses, and sometimes paper coveralls, but not respiratory
    protection.  Decedent recalled working in close proximity to DILLINGHAM (DILLINGHAM
7   CONSTRUCTION N.A., INC.) and TIMEC (BROADSPECTRUM DOWNSTREAM
    SERVICES, INC. (FKA TIMEC COMPANY, INC.)) employees removing existing asbestos-
8   containing insulation.

9   Decedent repaired backhoes and bulldozers at his employer's shop.  Decedent removed and
    replaced the asbestos-containing, original equipment manufacturer's clutches in CATERPILLAR
10  (CATERPILLAR INC.) D6 bulldozers.  Decedent removed and replaced asbestos-containing
    brakes, clutch friction components, and engine gaskets when repairing GENERAL MOTORS
11  (GENERAL MOTORS CORPORATION) trucks.  Decedent removed and replaced asbestos-
    containing friction components when replacing the clutch in a 1970 CHEVROLET (GENERAL
12  MOTORS CORPORATION) bobtail truck.  Decedent removed asbestos-containing exhaust
    manifold gaskets in the engine of a Dodge truck.  Decedent installed new asbestos-containing
13  VICTOR (DCO LLC (FKA DANA COMPANIES, LLC)) gaskets and later removed them during
    subsequent repairs to the exhaust manifold.  Decedent used compressed air to remove asbestos-
14  containing friction dust from his work areas.  Decedent's employer obtained replacement
    asbestos-containing engine gaskets, asbestos-containing brakes, and asbestos-containing clutch
15  friction components from NAPA AUTO PARTS (GENUINE PARTS COMPANY), Martinez,
    California.
16
17  Decedent recalled the following employee of DILLINGHAM CONSTRUCTION:  Gene McCoy,
    deceased.  Decedent recalled the owner of the company he worked for was Mark Gilbert,
18  deceased.  Decedent recalled supervisors:  Jim Riener, Antioch, California; and Phil Bioge,
    Rodeo, California.  Decedent recalled co-workers:  Jack Kelley, address currently unknown;
19  Reggie Cosmos, Bethel Island, California; Reggie Mederas, deceased; Steve, Billy, Paul, Roger,
    Jessie, Louie, Harvey, and Bobbie, last names and addresses currently unknown. At Tosco Corp.,
20  Avon, California, decedent worked with the following Tosco Corp. employees:  Charles
    Grimmett, Brentwood, California; and Ray O'Mary, address currently unknown.

21  | Employer | Location | Job Title | Dates |
    |---|---|---|---|
22  | Mount Diablo Corp., Inc. | Unknown location | Equipment | 1988 |
    | 857 Ponce de Leon Ave. | Contra Costa County, CA | Operator | |
23  | San Juan, Puerto Rico | | | |

24  Job Duties:  Decedent recalled operating a bobcat and a loader.  Decedent recalled filling in a
    retaining wall.
25
26  | Employer | Location | Job Title | Dates |
    |---|---|---|---|
    | Bay Cities Paving & Grading | Various City Streets | Backhoe | 1989 (1 day) |
27  | Inc. | Lafayette and Orinda, CA | Operator | |
    | 5029 Forni Drive | | | |
28  | Concord, CA | | | |

Job Duties:   Decedent was a backhoe operator.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Glenwood Construction Inc. Bankruptcy 292 Margarita Dr. San Rafael, CA | Unknown | Unknown | 1989 (1 day) |

Job Duties:  Decedent did not recall the specifics of this employment.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Lone Star Industries, Inc. 6601 Koll Center Pkwy. Pleasanton, CA | Unknown | Unknown | 1989 (1 day) |

Job Duties:  Decedent did not recall the specifics of this employment.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| PMI (Performance Mechanical, Inc.) Pittsburg, CA | Various locations in and around the Bay area, including: | Equipment Operator | 10/1991- 3/1992 (6 Months Total) |
| | Union Oil Rodeo, CA | Equipment Operator | 1991 (1 month) |
| | Dow Chemical, Pittsburg, CA | Equipment Operator | (5 months) |

Job Duties:  Decedent recalled working out of Operating Engineers Union Local #3.  Decedent recalled that this company had contracts with various plants to remove old pipes and install new ones.  Decedent recalled operating a crane and a backhoe.  At Union Oil, Rodeo, California, decedent operated a crane and performed rigging work during the construction of new vessels. At Dow Chemical, Pittsburg, California, decedent installed a fire main system in a new unit. Decedent recalled working in close proximity to pipefitters, insulators, and boiler technicians. Decedent recalled co-workers:  Paul, Bobbie, and Billy, last names and addresses currently unknown.

NON-OCCUPATIONAL EXPOSURE:

FRICTION:
Decedent recalled working in his father's automobile repair business in Macon, Georgia, from the time he was 8 years old, around 1945.  Decedent recalled working on used vehicles in the late 1940s and the 1950s.  Decedent later recalled performing repairs on vehicles belonging to family, friends and neighbors from the mid-1960s to the early 1990s, when he stopped because of a bad back injury.  Decedent recalled he had a semi-professional mechanic's shop in his garage and did all types of vehicle repairs over the years.  Decedent recalled he used an arcing machine to shape asbestos-containing brake shoes and an air compressor to blow asbestos-containing dust and debris out of the brake drums.  Decedent recalled dusty, dirty conditions as well as the asbestos-containing dust on his hair, face and hands.  Decedent recalled that he performed over 100 brake jobs during these years on various makes of used vehicles. In the early 1970s decedent removed and replaced the asbestos-containing, original equipment manufacturer's brakes in a 1969 FORD

1  (FORD MOTOR COMPANY).  Decedent identified the asbestos-containing brakes he removed
   as being original equipment manufacturer's material because he purchased the vehicle with low
2  mileage.  Decedent recalled purchasing brake products manufactured by NISSAN (NISSAN
   NORTH AMERICA, INC.), STANDARD MOTOR PRODUCTS (STANDARD MOTOR
3  PRODUCTS, INC.), BENDIX (HONEYWELL INTERNATIONAL INC.), FIRESTONE
   (BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC (FKA
4  BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC), BRIDGESTONE
   (BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC (FKA
5  BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC)), TOYOTA (TOYOTA
   GENUINE PARTS), and GM (GENERAL MOTORS CORPORATION).  Decedent recalled
6  purchasing clutch products manufactured by BORG-WARNER (MORSE TEC LLC, AS
   SUCCESSOR-BY-MERGER TO BORG-WARNER CORPORATION).  Decedent recalled
7  purchasing supplies from ANTIOCH AUTO SUPPLY; SHANNON AUTO PARTS, Main St.,
   Oakley, California, MONUMENT AUTO PARTS (TRIMON, INC), Clayton Road, Concord,
8  California, MONUMENT AUTO PARTS (TRIMON, INC) Delta Fair Blvd., Antioch,
   California, NAPA AUTO PARTS (GENUINE PARTS COMPANY), Brentwood Blvd.,
9  Brentwood, California, NAPA AUTO PARTS, (GENUINE PARTS COMPANY) East 18th
   Street, Antioch, California; CHIEF AUTO PARTS (AUTOZONE WEST LLC), Oakley,
10 California; and GRAND AUTO (O'REILLY AUTO ENTERPRISES, LLC (FKA CSK AUTO,
   INC.)), Antioch, California.  Decedent's son, Troy Randall Sullivan, c/o Brayton❖Purcell LLP,
11 assisted his father well over 100 times on vehicle repairs and maintenance throughout the 1970s,
   including brake and engine work.  Decedent's son recalled decedent sanded and installed NAPA-
12 branded (GENUINE PARTS COMPANY and PNEUMO ABEX LLC) and RAYBESTOS
   (RAYMARK INDUSTRIES, INC.) brakes on multiple vehicles.  Decedent's son recalled
13 decedent installed asbestos-containing clutches manufactured by RAYBESTOS (RAYMARK
   INDUSTRIES, INC.) on multiple vehicles.  Decedent's son recalled decedent removed existing
14 asbestos-containing valve cover and exhaust manifold gaskets.  Decedent's son recalled decedent
   installed new asbestos-containing valve cover and exhaust manifold gaskets manufactured by
15 FEL-PRO (FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST AS SUCCESSOR
   TO FELT-PRODUCTS MANUFACTURING CO.) and VICTOR (DCO LLC (FKA DANA
16 COMPANIES, LLC)).  Decedent's son recalled that on subsequent repairs to the same vehicles,
   decedent later removed many of the FEL-PRO (FEDERAL-MOGUL ASBESTOS PERSONAL
17 INJURY TRUST AS SUCCESSOR TO FELT-PRODUCTS MANUFACTURING CO.) and
   VICTOR (DCO LLC (FKA DANA COMPANIES, LLC)) he previously installed.  Decedent's
18 son recalled decedent cleaned leftover asbestos-containing gasket residue using sandpaper prior
   to installing new gaskets.  Decedent's son recalled decedent purchased asbestos-containing
19 replacement parts from MONUMENT AUTO PARTS (TRIMON, INC), Clayton Road, Concord,
   California.
20
   HOME REMODEL:
21 Decedent purchased and remodeled his home at 201 Wellington Circle, Clyde, California, in the
   early 1960s.  Decedent removed existing plaster and lath interior walls and cut, installed, taped,
22 and finished drywall interior walls.  Decedent purchased and remodeled his home at 5281
   Concord Boulevard, Concord, California in 1973.  Decedent remodeled the bedrooms and
23 bathroom of this house, added a spare room, and added a home office.  Decedent mixed, applied,
   and sanded asbestos-containing PACO (KELLY-MOORE PAINT COMPANY, INC.) QUIK-
24 SET joint compound.  Decedent was assisted in this home remodel work by his friends Ron
   McCoy, deceased; and Gene McCoy, deceased.
25
26
27
28